IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRED GEORGE COX, SR.,          §
                               §
        *Pro se* Plaintiff,    §
                               §
VS.                            §    CIVIL ACTION H-12-3500
                               §
PHASE III, INVESTMENTS,        §
Operators of 12643 E. Ashford  §
Meadow (Meadows on the Mew),   §
HORACE HILL, Individually and  §
As Manager,                    §
GENESIS COMMUNITY MANAGEMENT,  §
INC., As to all Other Owners,  §
Operators, Managers, Investors,§
Shareholders, Lienholders, All §
Other Interested Parties,      §
                               §
        Defendants.            §

## OPINION AND ORDER

Pending before the Court in the above referenced cause,
seeking damages and declaratory and injunctive relief for
violations of *pro se, in forma pauperis* Plaintiff Fred George Cox,
Sr.'s ("Cox's") rights as a tenant under his apartment lease and as
an aggrieved individual under state law and the federal
Constitution, is Defendant Genesis Community Management, Inc.'s
("Genesis's") motion to dismiss (instrument #9) pursuant to Federal
Rules of Civil Procedure 12(b)(6), 12(b)(7), and 19, directed to
Cox's Amended Complaint (#8).

Finally, this Court may dismiss a complaint filed *in forma
pauperis* under 28 U.S.C. § 1915(e)(2)(B)(1) if the Court finds that

"the  action is frivolous or malicious."  *Alfred v. Corrections Corp. of America*, No. 09-30614, 2011 WL 2201188, *2 (5th Cir. June 7, 2011).  A complaint is frivolous if it lacks an arguable basis in law or fact.  *Denton v. Hernandez*, 504 U.S. 25 (1989).  A complaint lacks an "arguable basis in law" if it is based on an indisputably "meritless legal theory" or a violation of a legal interest that does not exist, e.g., because defendants are absolutely immune from suit, or the complaint asserts a violation of a legal interest that does not exist, or the action is clearly barred by limitations.  *See, e.g.*, *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995); *Alfred v. Corrections Corp. of America*, 437 Fed. Appx. 281,  No. 09-30614, 2011 WL 2201188, *2 (5th Cir. June 7, 2011). The Court may dismiss factual allegations that are "'clearly baseless,'"  "'fanciful,'"  "'fantastic,'"  or  "'delusional.'" *Alfred*, 2011 WL 2201188 at *2, *citing Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeably facts available to contradict them." *Id.*, *citing id.* at 33.  The  court may not dismiss allegations merely because they are unlikely.  *Id., citing id.*

### Allegations of the Amended Complaint (#8)

Cox's Amended Complaint demonstrates a lack of comprehension of the law as it cites numerous statutes that do not apply to the

facts he sets forth.   Thus the Court attempts to summarize and clarify the factual allegations in his pleadings and relevant law.

Cox, "a 'Black Person' [who] was and is at all times m[e]ntioned a Resident of 12643 #E Ashford Meadow Drive, Houston, Texas 77082 . . .["Meadows on the Mews"]," townhome apartments owned and operated by Defendants.   #8 at p.2.   On or about June 11, 2008, Cox entered into a lease for apartment number "12643-E" and paid $950.00 for the first month's rent, deposit, and application fee.   The written Contractual Lease Agreement stated that Defendants agreed to maintain the property, pay the water bill, and promptly respond to any emergencies or need for repairs at the unit, and that the deposit of $300 would be returned when he vacated the property as long as the unit was left in the same or better condition as it was at the time he moved in.   Defendants agreed that his payments would be made around the 3rd of each month, when his Social Security check arrived, and that he would have a ten-day grace period before the rent was considered late and any fees would be assessed.

After Cox lived in the apartment for several months, Defendants in a "concerted" effort allowed the complex to deteriorate and allowed violent criminals (gangs, rapists, robbers, burglars, thieves, etc.) to move in.   #8 at p.5.   The complex became unsafe, with killings, assaults, rapes, robberies, break-ins and vandalism occurring.   "Vicious Threats and demands" for money

were made upon Cox, his family, and visiting friends and relatives "by defendants and Thugs alike [*sic*]." *Id.* Cox reported all of these occurrences. Defendants then threatened to have him evicted and jailed if he filed any more complaints with the City or other authorities. Cox characterizes these as "terroristic threats" and states that once successful, Defendants would collect "'Unowed Fees' all designed and done Intentionally and with Malice afterfore thoughts to deprive plaintiff of his cherished an Guaranteed Civil and Constitutional Rights Guaranteed by the United States Constitutional Amendments and Due Process of Law, Liberty an Property. [*sic*]" *Id.*

Furthermore, a day after he moved in, Cox complained to Defendants that his apartment lacked a smoke alarm, that the range top was faulty, that the oven was missing lights, and that there was mildew under the sinks, toilets and bathroom water pipes. Defendants agreed to fix these problems, but failed to do so. He also constantly notified Defendants about termites and roaches in the kitchen and bathrooms, but Defendants never took care of them. On July 6, 2008 Cox again notified Defendants of deteriorating conditions "caused by the Termites, Rodants, and Bugs eating the place apart, inside and out, added to the facts of their continued Harassment, treaths and treatment and false collection of monies not owed by plaintiff, the very Terroristic ways these actions were conducted and carried out. [*sic*]" #8 at p. 6. Defendant Horace

-4-

Hill "became very Hostile, Verbally abusive, threatening twoards plaintiff, Stating that 'It was such a Bad Mistake to have rented a unit to such a 'Dumb Ass' "Black Ass Nigga' that He Mr. Hill hated he done it.  But surely wanted plaintiffs 'Black Ass' out of his apartment. [*sic*]"  *Id.*  On or about November 2008 Cox complained of these violations to several government agencies responsible for enforcing building and housing codes.

On or about August 12, 2012, Defendants retaliated against him for these complaints and had Cox served with a three-day notice to terminate tenancy and ordered him to leave the property in three days.  They falsely accused him of not paying his June rent, for which he had a valid receipt.  Furthermore on October 17, 2012 Defendants filed for an eviction with the Justice of the Peace, Harris County, Precinct 5, Place 2, Case #EV52CO332998, in retaliation for Cox's exercise of his tenant and individual legal rights.

Cox also charges that during his four years of occupancy at Meadows on the Mews, several times Defendants failed to pay the water bill in violation of the lease agreement and of State and City laws and ordinances.  Cox went without water for seven days and had to pay or find other living arrangements at his own expense.  Nor did they repair the appliances and problems that made the apartment unfit for living that he reported as these were likely to cause injuries or health problems, nor did they provide

the security they promised and owed all tenants.  He complains that Defendants' actions are discriminatory and racist and violate the law.  He also alleges that they systematically segregated tenants by race and color to keep the "'Dumb Ass Black Niggas' in their rightful places in life.  To deprive a Race of people their Very Basic Human Civil and Constitutional Rights all, done without 'DUE PROCESS OF THE LAW.'"  #8 at p. 10.

On or about August 24, 2012 Cox served Defendants through certified mail with a "Notice of Intent to Sue," which they ignored.

### Standard of Review

The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(reciting the long-established rule that documents filed pro se are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  Nevertheless, "[e]ven a liberally construed pro se civil rights complaint . . . must set forth facts giving rise to a claim on which relief can be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).  "*[P]ro se* parties still must brief the issues and reasonably comply with the standards" of the Federal Rules.

-6-

*Flores v. Select Energy Services LLC*, 486 Fed. Appx. 429, 431 n.2
(5th Cir. Aug. 16, 2012), *citing Grant v. Cueller*, 486 Fed. Appx.
at 524.

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading
that states a claim for relief must contain . . . a short and plain
statement of the claim showing that the pleader is entitled to
relief."  When a district court reviews a motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the
complaint in favor of the plaintiff and take all well-pleaded facts
as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763
(5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir.
2009).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, . . . a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127
S. Ct. 1955, 1964-65 (2007)(citations omitted).   "Factual
allegations must be enough to raise a right to relief above the
speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller,
*Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.
2004)("[T]he pleading must contain something more . . . than . . .
a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

-8-

"Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

"Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, ___ F. Supp. 2d ___, Civ. A. No. 1:12-CV-417, 2013 WL 244651, *3 (E.D. Tex. Jan. 22, 2012), *citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:  Civil 2d* § 1356, at 294 (1990).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it

determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

Federal Rule of Civil Procedure 12(b)(7) permits a defendant to move to dismiss for "failure to join a necessary party" under Federal Rule of Civil Procedure 19.  Rule 19 provides for the joinder of all parties whose presence is necessary for a fair and complete resolution of the dispute, and it authorizes dismissal of litigation that should not proceed in the absence of parties that cannot be joined.  *HS Resources, Inc. v. Wingate*, 337 F.3d 432, 438 (5th Cir, 2003).  Rule 19 defines a required party is one "who is subject to the service of process and whose joinder will not deprive the court of subject-matter jurisdiction" and requires its joinder if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after 'an initial appraisal of the facts indicates that a possibly necessary party is

absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)(*quoting Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986)), *cert. denied*, 130 S. Ct. 1319 (2010).   If joinder of a necessary party will defeat jurisdiction, Rule 19(b) provides that "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."   The Rule sets out a non-exhaustive list of factors for a court to consider in making this determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice the person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief;
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).   Here Genesis moves to dismiss pursuant to Rule 12(b)(7) because the landlord with whom Cox entered into the lease agreement has not been joined.

### Genesis's Motion to Dismiss (#9)

Cox' Amended Complaint, #8 at p. 3, IV and V, states generally that Cox believes "that at all times mentioned in this complaint, defendants was/is, were the Agents of said (meadows on the mews) townhome apartments, in doing those things alleged in this

-11-

complaint were acting within the Course and Scope of that Agency" and that all of the Defendants "does own/operate 'Rental Units' Apartments [*sic*]" at the Meadows on the Mews.

Genesis states that since 1983 it has been in the business of providing full service administrative, financial, and physical management for single-family, townhome, and condominium homeowner associations in the Greater Houston Area.  In November 1996 Meadows on the Mews Owner Association, Inc. (the "Association"), a Texas nonprofit homeowners association formed for the purpose of managing and maintaining properties within Meadows on the Mews, collecting maintenance assessments, providing common services and enforcing the Restrictions, hired Genesis to manage the Meadows on the Mews. Genesis's services include, but are not limited to, collecting maintenance assessments, inspecting the property when required by the Association, holding Association records, and attending monthly and annual meetings.

Genesis contends that in suing it, Cox has sued the wrong party for failure to perform under a written lease and for retaliation in violation of the Texas Property Code because Genesis "has had no interaction with Plaintiff concerning his lease, has never seen the lease, is not a party to the lease, and has not retaliated against Plaintiff for alleged violation."  #9 at p.2. Furthermore Genesis proclaims,

> Genesis has no knowledge of the transactions/exchanges
> between landlords and tenants at Meadows on the Mews.

> Plaintiff has no standing to file suit against Genesis;
> Plaintiff has no contact or causal relation with Genesis
> that would allow him any cause of action against Genesis.
> Genesis does not own nor has it ever own[ed] the property
> made the subject of this suit, 12643 Ashford Meadow
> Drive, Unit #E, Houston, Texas 77082 (the "Property").
> Genesis was not the landlord for Plaintiff and did not
> enter into a lease or similar contract with Plaintiff.
> Genesis has no relation with the owner of the Property.
> The owner of the property, Horace Hill, is not an owner,
> employee, or agent of Genesis.  Because Genesis is not
> part of the lease between Plaintiff and his landlord
> (Genesis has not seen a copy of the lease and cannot
> attest that one actually exists) Genesis had no
> obligation to complete repairs and/or honor the terms of
> a lease for which it was not a party.  Genesis, acting as
> an agent for the Association, previously informed
> Plaintiff that the Association has no control over the
> actions of his landlord and that all disputes would need
> to be taken up with his landlord directly.

*Id.*

Moreover Genesis urges dismissal under Federal Rule of Civil Procedure 12(b)(7) because Plaintiff failed to join a necessary party, the landlord, to this action because the suit is based on a written contract between Plaintiff and his landlord.  Although Cox has listed his landlord in the suit's caption, he has not indicated he will serve the landlord or bring him into the pending suit.[1]

Thus because Plaintiff has failed to meet the pleading standards under Rule 12, this action should be dismissed under Rule

---

[1] Defendants Horace Hill and Phase III Investments were served (#13 and 16) after Genesis filed its motion to dismiss, and Horace Hill d/b/a Phase III Investments has filed an answer in which he states that he was the private owner of a couple of rental units, including 12643 #E Ashford Meadow, at the relevant times, but he was not an agent for Meadows on the Mews relating to any of the allegations in the complaint.

-13-

12(b)(6) and 12(b)(7).

## Cox's Response (#11)

Cox's response, titled "Objection to Defendants Motion for Summary Judgment" is procedurally and substantively confused and confusing and filled with inapposite and erroneous citations to law.  Cox conclusorily alleges that Genesis held a meeting on or about September 20, 2012 which he attended, at which Plaintiff spoke in depth about his injuries and the violations of his rights by all Defendants, and that Genesis joined in a concerted action to retaliate against him.  He asserts that, as a tenant, in order to obtain a parking permit several times over his five years at the complex, he had to go to the Genesis office and show a valid driver's license and a current copy of the lease, which Genesis now claims it never saw.  Insisting on Defendants' knowledge and deep involvement, Cox further alleges several new incidents of Defendants' retaliation for Cox's exercise of his legal rights under the law.  Cox concedes that he "is a 'Layman'" at law, not well versed on many points and authorities of the law and thus should be held to a less stringent standard than that of a professional attorney. [*sic*]"  #11 at p.9.

## Genesis's Reply (#20)

Genesis emphasizes two points:  (1) Cox confuses the standard of review and burden of proof for motions to dismiss with those for motions for summary judgment; and (2) Cox fails to plead any facts

showing that Genesis had any relationship with Plaintiff that would give rise to any duty and/or liability, contractual or otherwise, to support his allegations.   Moreover Cox relies on case law and statutes from other states and jurisdictions that are irrelevant to this proceeding.   Genesis does not seek dismissal on the grounds that the allegations are untrue, but on the basis that the facts that are alleged, even if true, would not show that Genesis is in any way liable to Plaintiff for the alleged violations.

### Court's Decision

The Court understands that Cox is a layman, but he needs to amend his pleadings to assert facts that demonstrate he has a plausible claim against each specific Defendant, individually, and, even before that, he needs to show that the Court has jurisdiction over this suit.   Thus drawing on Cox's Amended Complaint the Court sets out the legal guidelines for his suggested federal claims.

As the threshold matter, however, Cox must show that this Court has jurisdiction to hear his case.   A federal court may raise subject matter jurisdiction *sua sponte*.   *Peacock v. U.S.,* 597 F.3d 654, 658 (5th Cir. 2010). Because from the pleadings it appears that all named and unnamed parties are Texas residents, Plaintiff must show that this Court has federal question jurisdiction.   Federal question jurisdiction exists with respect to "all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   "[T]here is generally no federal

question jurisdiction if the plaintiff pleads only a state law cause of action." *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002).  The gravamen of Plaintiff's complaint here is breach of a lease agreement.  Claims for  breach of contract, civil conspiracy, violations of the Texas Insurance Code or the Texas Deceptive Trade Practices Act arise under state law and do not support federal question jurisdiction. *Vela v. Manning*, 469 Fed. Appx. 319, 321 (5th Cir. 2012).  "Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint.'"  *Id., quoting Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).  Plaintiff's Amended Complaint throws out the names of numerous, largely inapplicable federal statutes or laws (e.g., Federal Deceptive Trade Practices Act,[2] Federal Consumer Protection Act,[3] Federal Fair Housing Act,

---

[2] The Court has not found a statute with this title.

[3] The Federal Consumer Protection Act or Equal Opportunity Act, 15 U.S.C. § 1691, makes it unlawful for a creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sext, marital status or age (provided the applicant has the capacity to contract) because all or part of the applicant's income derives from any public assistance program or because the applicant in good faith exercised any right under this chapter.  For a prima facie case a plaintiff must show that (1) he was a member of a protected class, (2) that he qualified for credit, and (3) he was rejected. *Moore v. United States Dep't of Agriculture*, 875 F. Supp. 507, 513 (W.D. La. 1994), *vacated on other grounds*, 55 F.3d 991 (5th Cir. 1995).  Cox is not alleging that he applied for credit and was rejected despite being qualified for it.

H.U.D.,[4] Fair Housing Discrimination Act, Federal Property Statutes,[5] Federal Tort Claims Act,[6] and the First, Fifth, Seventh and Fourteenth[7] Amendments of the United States Constitution) without asserting sufficient facts showing that he has a cause of action under them.

Cox may have a claim under §§ 3604 and 3617 of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, which would present a basis for federal question jurisdiction.

The Federal Fair Housing Act ("FHA") prohibits discrimination in housing toward any person based on race, color, religion, sex,

---

[4] The Department of Housing and Urban Development ("HUD") is charged with implementing and administering the FHA. *Meyer v. Holley*, 537 U.S. 280, 287-88 (2003), *citing* 42 U.S.C. § 3608. Where its interpretations of the statute are reasonable, the courts usually defer to them. *Id., citing Chevron U.S.A., Inc, v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984).

HUD itself regulates public housing and would not govern Cox's private apartment complex.

[5] Plaintiff fails to identify what statutes.

[6] The Federal Tort Claims Act is a limited waiver of sovereign immunity for suits against the United States for money damages or injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. *Sheridan v. U.S.*, 487 U.S. 392, 398 (1988). Cox is not suing the government or a government employee, but private individuals.

[7] The Fourteenth Amendment (including due process and equal protection clauses) does not limit the conduct of purely private persons in their ordinary activities, but requires some governmental action. *Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1973); *McQueen v. Druker*, 317 F. Supp. 1122, 1127 (D.C. Mass. 1970). Plaintiff has failed to allege any governmental involvement here.

-17-

handicap, familial status, or national origin.  Under 42 U.S.C. § 3613(1)(A), "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."  *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982)(If a plaintiff alleges "an unlawful practice that continues into the limitations period, the complaint is timely if filed within [two years] of the last asserted occurrence of that practice.").  An "aggrieved person" is "any person who claims to have been injured by a discriminatory housing practice."  42 U.S.C. § 3602(i)(1).

Section 3604(a) of the FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin."  The definition of a "discriminatory housing practice" also includes discriminating "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  Courts have construed this provision to prohibit "failing or delaying maintenance or repairs" of the plaintiff's dwelling because of race.  24 C.F.R. 100.65; *see, e.g., Mehta v. Beaconridge*

*Improvement Ass'n,* 432 Fed. Appx. 614, 616–17 (7th Cir. July 28, 2011)(A plaintiff suing under the FHA may sue a homeowner's association if the association engages in invidious discrimination in failing to provide maintenance services); *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009); *Miller v. 270 Empire Realty LLC*, No. 09-CV-2857 (RJD)(RER), 2012 WL 1933798, *5 (E.D.N.Y. Apr. 6, 2012). Finally, § 3604(c) prohibits a person engaged in the sale or rental of a dwelling from making of any statement "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." *See, e.g., Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999)(holding landlord's agent's racists statements to white tenant, overheard by black tenant, was covered by section 3604); *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F. Supp. 695, 716 (E.D. Mich. 1992)("The purpose of § 3604(c) is to prevent expressions that result in the denial of housing, not to prevent all discriminatory expression."), *aff'd*, 18 F.3d 337 (6th Cir. 1994).

The gaping deficiency in Cox's Amended Complaint is that it does not relate most of its complaints to the FHA's relevant protected trait here, race discrimination, while those few statements that do raise the issue are wholly conclusory. The

protected trait needs only be "one significant factor" in the defendant's decision to violate the FHA.  *Simms v. First Gibralter Bank*, 83 F.3d 1546, 1556 n.30 (5th Cir.), *cert. denied*, 519 U.S. 1041 (1996), *citing Hanson v. Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir. 1986)("Courts have consistently given an expansive interpretations to the Fair Housing Act; to state a claim under the Act, it is enough to show that race was a consideration and played some role in a real estate transaction.").

To state a claim under the FHA, a plaintiff may demonstrate either proof of discriminatory intent (disparate treatment) or a significant discriminatory effect (disparate impact). *Artisan/American Corp. v. City of Alvin*, Civ. A. No. 4:07-cv-2899, 2008 WL 8894683, *4 (S.D. Tex. Nov. 19, 2008), *citing Simms*, 83 F.3d at 1555, and *Hanson,* 800 F.2d at 1386; *Arbor Bend Villas Hous., LP v. Tarrant Cty. Hous. Fin. Corp.*, 2005 WL 548104, *5 n.3 (N.D. Tex. Mar. 9, 2005).  Cox appears to assert alleged discriminatory intent (individual disparate treatment).[8]

In an action under the FHA, where there is no direct evidence, to demonstrate intentional discrimination based on race, the Court applies the burden-shifting evidentiary standard established in

---

[8] The standard for finding discriminatory intent is the same under the FHA as under the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1982, and 43 U.S.C. § 1983. *Arbor Bend*,  2005 WL 548104, at *11.  Section 1983 requires the defendant to be acting under color of state law, not the case here so that statute does not apply.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) for Title VII employment discrimination cases based on circumstantial evidence. *Arbor Bend Villas Hous., LP v. Tarrant Cty. Hous. Fin. Corp.*, 2005 WL 548104, *5 (N.D. Tex. Mar. 9, 2005). To state a claim for individual disparate treatment under § 3604(a), Cox must allege facts supporting a *prima facie* case that (1) he is a member of a protected class, (2) he applied to rent or purchase an apartment or house and was qualified to rent or purchase the housing, (3) that he was rejected, and (4) that the housing remained open after he was rejected. *Graoch Associates #33, LP v. Louisville/Jefferson County Metro*, 508 F.3d 366, 371 (6th Cir. 1996). *See also Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999)(To allege a *prima facie* case of disparate treatment claim under the FHA, the plaintiff must assert (1) his rights are protected under the FHA, and (2) as a result of defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury."); *Collins v. Chesapeake Commons Holdings, LLC*, 2011 WL 2580360, *3 (E.D. Cal. June 28, 2011)(For a *prima facie* case of disparate treatment under § 3604(b) the FHA, a "plaintiff must allege facts that demonstrate: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified to receive services from [the defendant]; (3) {defendant] denied plaintiff the services for which she was qualified; and (4) [defendant] provided the services it denied to plaintiff to a similarly situated party

during a period relatively near the time plaintiff was denied the services."); *Rivera v. Incorporated Village of Farmingdale*, 784 F. Supp. 2d 133, 146-47 (E.D.N.Y. 2011)("A plaintiff may 'establish a *prima facie* case [of disparate treatment] by showing the animus against the protected group 'was a significant factor in the position taken by' the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsible.'"), *citing LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995), and *U.S. v. Yonkers Bd. of Educ.*, 837 F2d. 1181, 1217 (2d Cir. 1987).

The applicability of the FHA here is further complicated because of a split in interpretation of the Act among the Circuits where the discrimination occurs after the plaintiff acquired his home or leased his apartment, a situation which appears to encompass all of Cox's claims. The federal Circuit Courts of Appeals have a significant disagreement regarding Section 3604(b) and 3604(c). Some view their language to limit application of § 3604(b)("to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith") to discrimination relating only to the initiating "sale or rental of a dwelling," and therefore inapplicable to post-acquisition discrimination, while others take the more traditional, expansive view that § 3604(b) relates to discriminatory conduct throughout

the duration of a lease or the occupancy of the home.  In *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004), Judge Posner moved away from the traditional broad view of the FHA that the statute covered both acquisition of housing and post-acquisition discriminatory conduct and held that the statute did not apply to post-acquisition action, with a possible exception where it caused actual or constructive eviction.  Subsequently the Fifth Circuit, relying on *Halprin*, joined the Seventh Circuit in concluding that the FHA does not protect post-acquisition occupancy of housing.  *Cox v. City of Dallas*, 430 F.3d 734, 742-43 (5th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006).  In contrast, eight other Circuit Courts of Appeals (the First,[9] Fourth,[10] Sixth,[11] Eighth,[12] Ninth,[13] Tenth,[14] Eleventh,[15]

---

[9] *Hogar Agua y Vida en el Desierto, Inc, v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994).

[10] *Betsey v. Turtle Creek Assoc.*, 736 F.2d 983, 988 (4th Cir. 1984).

[11] *Hamad v. Woodcrest Cono. Ass'n*, 328 F.3d 224, 229 (6th Cir. 2003).

[12] *Neudecker v. Boisclair Corp.*, 351 F.3d 361 (8th Cir. 2003).

[13] *Walker v. City of Lakewood*, 272 F.3d 1114, 1120 (9th Cir. 2001), *cert. denied sub nom. City of Lakewood v. Fair Housing Foundation of Long Beach*, 535 U.S. 1017 (2002).

[14] *Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 1993).

[15] *Woodard v. Fanboy, LLC*, 298 F.3d 1261 (11th Cir. 2002).

and D.C. Circuits)[16] have held that the FHA does apply to post-acquisition discrimination.

Moreover in *Cox v. City of Dallas*, the Fifth Circuit held that § 3604(a) concerns access to or availability of housing, but does not apply to the habitability of the housing.  430 F.3d at 740-41. It did raise but did not answer the question whether a constructive eviction[17] claim, a type of habitability claim, might be viable "when the 'habitability' has so decreased that continued residence is not objectively reasonable.  We reject only those 'habitability' claims that fall short of constructive eviction, leaving the question of constructive eviction for another day."  *Id.* at 742 n.21.  *See also id.* at 745 n. 32 ("[W]e do not foreclose the possibility of a § 3603(a) or (b) claim as the result of eviction or constructive eviction, because such actions may make housing 'unavailable' or deny 'privileges of sale' or 'services.'").  The Seventh Circuit in *Halprin*, similarly observed, "As a purely

---

[16] *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714 (D.C. Cir. 1991).

[17] The Seventh Circuit in *Bloch v. Frischholz*, 587 F.3d 771, 777 (7th Cir. 2009)(*en banc*), opined that "[p]roving constructive eviction is a tall order . . . . Ordinarily, the plaintiff in such a case must show her residence is 'unfit for occupancy often to the point that she is 'compelled to leave. . . . Plaintiffs must show more than a mere diminution in property values, . . . more than just that their properties would be less desirable to a certain group. . . . Even in *Halprin*, the allegations of the defendants' blatantly discriminatory acts, including spraying the plaintiff's yard with harmful chemicals, were insufficient to give rise to a § 3604(a) claim."  "[C]onstructive eviction is an option under § 3604(b) as well."  *Id.* at 779.

-24-

semantic matter the statutory language [of § 3604] might be stretched far enough to reach a case of 'constructive eviction,'" but emphasizing that it focused on exclusion, not expulsion. 388 F.3d at 329. *See also Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714, 719 (D.C. Cir. 1991)(holding that "[b]y their plain terms [§§ 3604(a) and (f)(1) reach only discrimination that adversely affects the availability of housing" rather than the "habitability"; a denial of certain "essential services relating to dwelling" such as sewer hookups or basic utilities "in a constructive eviction might result in a § 3604(a) claim)), *cited by Cox*, 388 F.3d at 301-02.

Cox's complaint asserts post-acquisition claims, which mainly relate to conditions of habitability but do not clearly appear related to race discrimination. Even if they were, under Fifth Circuit law unless they reach the level of constructive eviction or actual eviction, they fail to state a claim under the FHA. If Plaintiff in good faith can allege facts establishing causation among (1) the alleged racial discrimination, (2) his complaints to various authorities, and (3) his actual eviction, he may have an FHA claim, but thus far his pleadings are deficient.

While he conclusorily states that Defendants discriminated against him because of his race, his only factual allegations showing purposeful racial discrimination, however, are a couple of comments he claims were made by some unidentified Defendant as

direct evidence of discriminatory intent.  Cox must plead facts demonstrating racial discrimination attributable to specific Defendants, identifying who did what, under the FHA.

While 42 U.S.C. § 3604 addresses substantive rights under the statute, § 3617, the retaliation clause of the FHA, prohibits a defendant's interference with those substantive rights.  Section 3617 provides, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of his having exercised or enjoyed . . . any rights granted or protected by section . . . 3604 . . . of [the FHA]."  *See generally Texas v. Crest Asset Management, Inc.*, 85 F. Supp. 2d 722, 732-33 (S.D. Tex. 2000).  Where there is no direct evidence of retaliation, the Title VII burden-shifting framework of *McDonald Douglas* applies.  *Id.* at 773.  *Oxford House, Inc. v. City of Baton Rouge, La.*, _____ F. Supp. 2d ___, Civ. A. No. 11-391-JJB, 2013 WL 1154291, *15 (M.D. La. Mar. 19, 2012), *citing Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  To state a *prima facie* case for retaliation, a plaintiff must allege facts showing that "(1) he engaged in an activity that [the FHA] protects; (2) he was subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse . . . action."  *Id., citing LeMaire v. Louisiana Department of Transportation & Development*,

480 F.3d 383, 388 (5th Cir. 2007).[18]  A "protected activity" may be opposition to "any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'"  42 U.S.C. § 12203(a).  Cox needs to be more specific about the complaints he made, to whom, and whether an investigation or hearing followed.  The causation element can be established by circumstantial evidence by showing that the protected activity was closely followed by the adverse action. *Id., citing Cifra v. General Electric Co.*, 252 F.3d 205, 217 (2d Cir. 2001), and *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004)(finding that "where the temporal proximity between the protected activity and the adverse . . . action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to aries."  Cox needs to provide more details about his eviction.  The Court notes that it is not necessary to state an underlying claim of discrimination under the FHA to prevail on a retaliation claim.  *Id.* at *16.  Cox has generally alleged that Defendants actually evicted him in

---

[18] Once the plaintiff alleges a prima facie case, under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which has been applied by district courts in the Fifth Circuit to FHA retaliation claims, the burden shifts to the defendant to "'articulate a legitimate, nondiscriminatory reason for the challenged . . . action.'"  *Id., quoting Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996); *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11-CV-1239-D, 2011 WL 4359940, *8 (N.D. Tex. Sept. 19, 2011).

retaliation for his complaints and reports of conditions to the City but fails to provide some details as to when, to whom, and about what.

Cox may have a claim under either one or both of §§ 1981 and 1982 of the Civil Rights Act.

Title 42 U.S.C. § 1981 of the Civil Rights Act provides,

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. McDonald*, 546 U.S. 470, 476 (2006).   To state a claim for a

violation of § 1981, the plaintiff must allege facts showing that (1) he is a member of a protected class; (2) the defendant(s) intended to discriminate against him on the basis of race; and (3) the discrimination related to one or more of the activities enumerated in the statute, including the right "to make and enforce contracts." *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002). The plaintiff must allege and ultimately prove purposeful discrimination. *General Bldg. Contracts Ass'n Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982).

While § 1981 focuses on the right to make and enforce contracts, § 1982 focuses on rights related to ownership of property. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). Title 42 U.S.C. § 1982 states, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, sell, hold, and convey real and personal property.". To state a claim under § 1982, Cox must allege that he is a member of a racial minority and that Defendants intentionally engaged in discrimination against him. *Chapman v. Arlington Housing Authority*, 145 Fed. Appx. 496, 497 (5th Cir. 2005). Section 1982 "prohibits all racial discrimination, private as well as public, with respect to property rights." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 195 (2003); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 421-23 (1968) *Hanson*, 800 F.3d at 1386.   It also covers

discriminatory conduct not only during the sale or lease, but also after the acquisition of a lease or a house, as well as of personal property ("to inherit, purchase, lease, sell, hold, and convey real and personal property.")

In an action under § 1981 or § 1982, where there is no direct evidence of discrimination, the Court applies the burden-shifting evidentiary standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) for Title VII employment discrimination cases. *Arbor Bend Villas Hous., LP v. Tarrant Cty. Hous. Fin. Corp.*, 2005 WL 548104, *5 (N.D. Tex. Mar. 9, 2005), *citing William v. Galveston ISD*, 256 F. Supp. 2d 668, 671 (S.D. Tex. 2003).

There is also an issue here whether Cox's possible claims are time-barred.  As noted, under the relevant part of § 3613(a)(1)(A) of the FHA, "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."  Claims under § 1981 and § 1982 must be brought within the limitations period for analogous state claims.  *Burnett v. Grattan*, 468 U.S. 42, 49 (1984).  Texas' two year statute of limitations for personal injury under Tex. Civ. Prac. & Rem. Code § 16003(a) governs causes of action under §§ 1981 and 1982.  *Dews v. Town of Sunnyvale, Tex.*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000).  Under federal law, the statutes begin to run

when the plaintiff knows or has reason to know of the injury that is the basis of the claim. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). Since Cox filed this action on November 30, 2012 most of the allegations in Cox's complaint during his occupancy of his town home since 2008 would appear to be time-barred under the two-year statute of limitations.

Nevertheless a complaint asserting ongoing violations filed under the Fair Housing Act is timely if filed within 180 days of the last asserted occurrence of an unlawful practice. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-82 (1982)(The continuing violation doctrine of the FHA applies "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period."); *Pecan Acres Limited Partnership I v. City of Lake Charles*, No. 02-30486, 2002 WL 31730433, *1 (5th Cir. Nov. 29, 2002); *Dews v. Town of Sunnyvale, Tex.*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000). The continuing violation doctrine allows consideration of unconstitutional or illegal acts occurring outside the statue of limitations to be considered when there is a "fixed and continuing practice" of unlawful acts both before and during the limitations period. *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984).

To allege and ultimately prove a continuing violation, a

"plaintiff must demonstrate more than a series of discriminatory acts.  He must show an organized scheme leading to and including the present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."  *Huckaby v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).  In *Haven*, 455 U.S. at 380, the Supreme Court opined, "'[A] continuing violation under the Fair Housing Act should be treated differently from one discrete act of discrimination.  Statutes of limitations are intended to keep stale claims out of the courts.  Where the challenged violation is a continuing one, the staleness concern disappears."  "A plaintiff cannot use the continuing violation theory to resurrect claims . . . concluded in the past, even though its effects persist.'" *McGregor v. La. State Univ. Board of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1998)(*quoting Haven*).  "[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."  *Haven*, 455 U.S. at 380-81.  Such appears to be the case here.  Thus while Cox's FHA claims would be timely under the continuing violation doctrine, any claims he might assert under §§ 1981 and 1982 may only go back to November 30, 2010.  Plaintiff needs to identify the dates of the various alleged discriminatory actions of Defendants.

According to the complaint, although far too conclusory to satisfy Rule 12(b)(6), Defendants' allegedly discriminatory actions appear to be ongoing and cumulative for most of his four-year occupancy of the townhome since 2008.  He claims that Defendants systematically segregated tenants by race and color to keep the "'Dumb Ass Black Niggas' in their rightful places in life.  To deprive a Race of people their Very Basic Human Civil and Constitutional Rights all, done without 'DUE PROCESS OF THE LAW.'" #8 at p. 10.

Because the FHA's prohibition on discrimination is frequently interpreted in accordance with Title VII's prohibition on discrimination in employment, the Court addresses the Fifth Circuit's evidentiary standards for discriminatory remarks for purposes of Cox's FHA claim.  "Workplace remarks may constitute direct evidence of discrimination if they are '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse . . . decision]; 3) made by an individual with authority over the . . . decision at issue, and 4) related to the . . . decision at issue." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 853 (S.D. Tex. Jan. 14, 2010)(and cases cited therein).  Alternatively, "[i]f the comments are vague and remote in time or the speaker has no authority or influence over the . . . decisions, they are merely 'stray remarks.'" *Id.* (and cases cited therein).

Furthermore, if Cox is able to allege a claim providing the Court with federal question jurisdiction, since Cox clearly complains of a breach of the lease agreement, if and when he amends his complaint he should attach a copy of that contract to his pleading.  Second, he needs to identify specifically who signed the contract with him, and thus who is bound by it and could have breached it.  If other Defendants are agents of the party that signed the lease agreement, he must state facts showing that they have such a relationship with the signer.  As it is, the Court cannot tell from the Amended Complaint why Cox is suing each Defendant or precisely for what.

Finally, with regard to Genesis's motion to dismiss before the Court, asserting that it is in no way liable to Plaintiff because it had nothing to do with the lease agreement, here again Cox must allege sufficient facts about Genesis's role in the discriminatory acts of which he complains.  Plaintiff does not allege what particular services Genesis provided to tenants at the complex and what its relationship (whether contractual or agency) is to the owner/landlord of Cox's townhome in the Meadows on the Mews.  The FHA, which provides for vicarious liability, imposes liability according to traditional agency principles, which "ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  Under traditional agency

principles and the FHA, "courts have generally found that property owners have a non-delegable duty to not discriminate and that they will be vicariously liable for discriminatory actions of their . . . agents." *U.S. v. Sturdevant*, Civ. A. No. 07-2233-KHV, 2009 WL 1211051, *6 (D. Kan. May 1, 2009), *citing inter alia Habersham Properties, Inc.*, 319 F. Supp. 2d 1366, 1375 (N.D. Ga. 2003)(holding property owner liable for the conduct of an employee of its property management company that manages its complex based on agency relationship).  Whether or not the management company or the owner/landlord knew about or authorized any discriminatory conduct is irrelevant; the FHA "imposes liability without fault upon the employer in accordance with traditional agency principles," including corporate entities.  *Meyer v. Holley*, 537 U.S. at 282.  *See generally* Robert G. Schwemm, *Who may be liable under the Fair Housing Act--Principals and Agents*, 12B:2 Housing Discrimination Law and Litigation (database updated June 2012).  Thus it is possible that Genesis may be liable here, depending upon what facts Cox alleges.

Accordingly, the Court ORDERS that Plaintiff shall file an amended complaint within twenty days if he can satisfy the pleading standards of the Federal Rules of Civil Procedure and can allege sufficient facts to support the elements of a federal law and state a plausible claim that will provide this Court with federal question jurisdiction.  Failure to

comply will result in dismissal of this suit.  The Court further

ORDERS that Genesis's motion to dismiss is DENIED without prejudice to being reurged, either in its current form or as amended, if appropriate with respect to the Second Amended Complaint.

**SIGNED** at Houston, Texas, this __14th__ day of __May__, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-36-